CARLO, PLAINTIFF AND APPELLEE, *v.* FERRER ET AL., DEFENDANTS AND APPELLANTS.

APPEAL from the District Court of Mayagüez in an Action of Ejectment.

No. 1710.—Decided March 18, 1919.

PLEADING—COMPLAINT—INHERITANCE.—When it is alleged in the complaint that the plaintiff is the owner by inheritance of a rural property of seven acres therein described it is sufficient that the plaintiff allege to establish his ownership that of the seven acres his predecessor in title had acquired two acres by inheritance from his mother, four by purchase and one by inheritance from his father.

ID.—PARTIES—MULTIPLICITY OF ACTIONS.—All persons who have an interest in the subject-matter of the suit that may be affected by the judgment are necessary parties. This rule is based on the principle which aims to prevent subsequent litigation and a multiplicity of actions by the determination of all the rights of all the parties who can or may be affected by a judgment.

ID.—JOINDER.—When several causes of action are closely related among themselves because some depend on others there is no objection to sustaining a joinder of them.

ID.—SUBMISSION.—The right of a defendant to exact that the causes of action be stated separately must be exercised before answering, for otherwise the defendant submits to a trial under the original form of the complaint.

ID. — AMENDMENT — RECONSIDERATION. — The trial court does not commit error in entering an order setting aside a previous order requiring the plaintiff to amend his complaint, for it is so authorized by subdivision 3 of section 3 of the Code of Civil Procedure.

ID.—CONTINUANCE—UNPREPAREDNESS.—A defendant who does not move for a continuance before submitting his evidence, notwithstanding the express offer of the court to set the case for another day after the plaintiff had rested in order to give the defendant ample opportunity to prepare his defense, nor moves for such continuance after examining his own evidence, cannot plead unpreparedness.

ID.—PARTITION—EVIDENCE.—It not having been alleged in the complaint that a deed of partition of the estate had been executed, but only that the estate had been divided among the heirs, evidence was admissible under that allegation to prove the partition and division of the estate, although such partition did not appear in a private or public document.

ID.—EVIDENCE—WILL—FRIVOLOUS PLEADING.—The right asserted by the plaintiff in the properties left by his wife being derived from a will, the allegation that the will is not admissible in evidence is frivolous.

ID.—ID.—TAX RECEIPT—PREJUDICE.—The admission in evidence of a tax receipt that has no relation to the property described in the complaint does not of itself justify a reversal of the judgment, unless it is shown to have been prejudicial to the defendants.

PRIVATE INSTRUMENT—THIRD PERSON.—There is no provision of the Civil Code positively requiring that a private instrument be executed before a notary public by the parties to it in order that it may prejudice a third person.

PUBLIC SALE—THIRD PERSON.—One who purchases a property at public sale knowing beforehand that the property belongs to a person other than the one in whose name the sale is made is not a third person.

NEW TRIAL — EVIDENCE — PREJUDICE. — The defendants moved for a new trial, alleging, among other grounds, that the case had not been continued, on account of which, their principal witness not being present when the witnesses for plaintiff testified, they were unable to cross-examine the said witnesses on facts which were best known to the absent witness. *Held:* That the defendants were under the obligation to state what additional facts they could have produced in evidence by cross-examination or what objection they could have made to the credibility of the plaintiff's witnesses, and their failure to do so left the court without knowledge as to what prejudice was suffered by the defendants, if any.

AMENDMENT—DISCRETION OF COURT—PRESUMPTION.—The authority of the courts to allow amendments to the pleadings under sections 136, 137 and 140 of the Code of Civil Procedure is discretional and unless an abuse of discretion is shown the presumption is that the discretion was properly exercised.

The facts are stated in the opinion.

*Mr. Angel A. Vázquez* for the appellants.

*Mr. José Benet* for the appellee.

MR. CHIEF JUSTICE HERNÁNDEZ delivered the opinion of the court.

On May 9, 1916, plaintiff José Federico Carlo Zapata filed an amended complaint in the District Court of Mayagüez containing the following allegations:

"1. José María Ferrer y Pagán was the owner in fee of a tract of thirteen acres of land known as 'El Barro,' containing a one-story frame house roofed with tiles and a kitchen of the same materials in the ward of Llanos, municipality of Cabo Rojo, bounded as described, which parcel of land was acquired by José María Ferrer y Pagán by purchase from his father, Lázaro Ferrer, during his lawful wedlock with María de los Angeles Pabón e Irizarry.

"2. On August 27, 1899, María de los Angeles Pabón e Irizarry died in Cabo Rojo and her estate, including her interest in the property of thirteen acres, was partitioned and distributed among her heirs, two acres of the said property being allotted to the wife of the plaintiff, María de los Angeles Ferrer y Pabón.

"3. On December 6, 1900, María de los Angeles Ferrer y Pabón purchased from her father, José María Ferrer y Pagán, four acres of land segregated from the property known as 'El Barro,' which, together with other lands, had been allotted by the heirs to José

María Ferrer y Pabón upon the death of his wife, María de los An-
geles Pabón.

"4. María de los Angeles Ferrer y Pabón consolidated the two
acres which she inherited from her mother with the four acres pur-
chased from her father, making one single property of six acres which
is also described.

"5. José María Ferrer y Pagán died intestate at Cabo Rojo on
November 8, 1903, owning several properties in that town, and the
heirs having by mutual consent partioned the same, one acre of
land segregated from the said 'El Barro' property was conveyed to
María de los Angeles Ferrer y Pabón, who thus became the owner
of a parcel of seven acres of land which is described as follows: ·

'A rural property of six (sic) acres of land situated in Llanos
Tuna ward of the municipality of Cabo Rojo, bounded on the north
by property of Amparo Rivera, formerly of Gerónimo Ramírez; on
the south by property of José María Ferrer y Pagán and the public
road to Cabo Rojo and Boquerón which separates the wards of Llanos
Tuna and Llanos Costas; on the east by property of José María
Padilla, formerly of José María Ferrer, and on the west by lands
of José María Ferrer y Pagán.'

"6. María de los Angeles Ferrer y Pabón died leaving a will
dated August 15, 1910, in which she named as the sole and universal
heir to all of her estate her lawful husband, plaintiff José Federico
Carlo Zapata, who became the owner of the property of seven acres
which he has publicly, quietly, peacefully and uninterruptedly pos-
sessed since the death of his wife, who had possessed the same and
under like conditions since the dates on which they were respectively
acquired.

"7. On October 14, 1910, José Ubaldino, Rosa María, Fernando
del Carmen, José Antonio and Luis Ferrer y Pabón, as children and
heirs of José María Ferrer y Pagán, and Ramón María Rivera y
Ferrer, Amparo Rivera y Ferrer, Benjamín Carlo y Ferrer and Inda-
lecio Carlo y Ferrer, as grandchildren of José María Ferrer y Pagán,
by their attorney, Carlos del Toro Fernández, brought suit against
plaintiff José Federico Carlo Zapata in the District Court of Maya-
güez for the annulment of the will of María de los Angeles Ferrer
y Pabón in which the plaintiff was made her heir. The case was
prosecuted under No. 2957 of the said district court and on Jan-
uary 21, 1911, an order was entered to the effect that the plaintiff
had abandoned the suit and that judgment should be entered accord-
ingly, which was done later.

"8. In the beginning of March, 1911, José María Ferrer y Pabón, by his attorney, Angel A. Vázquez, petitioned the said District Court of Mayagüez for a designation of the heirs of the spouses José María Ferrer y Pagán and María de los Angeles Pabón e Irizarry, and by an order of March 24, 1911, the court declared the seven children of said spouses, namely, José Ubaldino, José Antonio, José María, Fernando del Carmen, Rosa María, Luis and María de los Angeles Ferrer y Pabón, their four grandchildren Indalecio, Julio Benjamín, Lisandro and Arsenio Carlo y Ferrer, and also their grandchildren Ramón María and Amparo Rivera y Ferrer, to be their sole and universal heirs. Thereupon José Ubaldino and José María Ferrer y Pabón, taking advantage of the fact that they had a public instrument showing José María Ferrer y Pagán to be the owner of the property of thirteen acres called 'El Barro' and knowing that seven acres of said property belonged to the plaintiff, maliciously and with the object of depriving the latter of the ownership and possession of the said property and of defrauding him of his rights, and actuated by perverse minds, caused the property of thirteen acres to be recorded in the Registry of Property of San Germán on May 16, 1911, as the common property of the defendants by title of inheritance.

"9. José Ubaldino Ferrer y Pabón died at Cabo Rojo in the year 1913, leaving eight legitimate children named Primitivo, Amelia, María Jesús, Narciso, Juana, Concepción, Ubaldino and Josefa Ferrer y Toro who succeeded to the hereditary rights of their deceased father and who, therefore, together with all the other heirs, herein mentioned, are defendants in this action.

"10. Both the plaintiff and his successor in interest, María de los Angeles Ferrer y Pabón, have at different times demanded of the heirs of José María Ferrer y Pagán and María de los Angeles Pabón e Irizarry that they execute the proper title deeds in their favor, but the demands have not been complied with.

"11. In action No. 1950 brought by Angel A. Vázquez against the heirs of the spouses José María Ferrer y Pagán and María de los Angeles Pabón e Irizarry in the Municipal Court of Mayagüez to recover his professional fees, he obtained judgment by default against defendants José Antonio, José María, Fernando del Carmen, Rosa María and Luis Ferrer y Pabón and also against defendants Indalecio, Julio Benjamín, Lisandro and Arsenio Carlo y Ferrer and Ramón María and Amparo Rivera y Ferrer for the sum of $500, and in execution of the said judgment the marshal of said court, at the express indication of Angel A. Vázquez, on December 20, 1915, levied

on all the right, title and interest of the defaulting defendants in the property of seven acres, which was sold to Angel A. Vázquez at public auction for the sum of $100 in part payment of his claim, the marshal executing on March 26, 1916, a deed of sale in his favor and the said Angel A. Vázquez conveying by the same deed the said property to the other defendant, Luis Ferrer y Pabón, for a nominal sum of $250.

"12. Both Angel A. Vázquez and Luis Ferrer y Pabón knew at the time and before the said acts were performed that the property of seven acres belonged to the plaintiff, José Federico Carlo Zapata, and also knew that the present action to clear title and for cancelation had been brought, and they deliberately and with the intention of injuring the plaintiff agreed that Angel A. Vázquez should secure a judgment by default, levy on the property of seven acres and have the same conveyed to him in violation of the rights of plaintiff José Federico Carlo y Zapata."

The complaint concludes with a prayer that the court adjudge that the property of seven acres described in the complaint, forming a part of the "El Barro" property of thirteen acres, also described, belongs in fee to the plaintiff by title of purchase and also by prescription, and order the cancelation of the record of said property of thirteen acres in the registry in the names of the defendants in so far as regards the seven acres which the plaintiff claims as his; that the court order a record of said parcel of seven acres in the name of the plaintiff; that the conveyances made by the marshal of the municipal court of Mayagüez to Angel A. Vázquez and by Vázquez to Luis Ferrer be held null and void, and that the costs, disbursements and attorney fees be imposed upon the defendants who opposed the complaint.

After the court by its order of August 17, 1916, had overruled the motion of defendants José Antonio, José María and Luis Ferrer and Angel A. Vázquez to strike out and make more definite certain matters, and after the court had also overruled the demurrer of defendant Angel A. Vázquez, defendants José Antonio, José María and Luis Ferrer and Angel A. Vázquez made separate answers thereto, admitting

certain facts, denying others and setting up new matter and special defenses.

After a trial wherein both parties introduced evidence, the court rendered judgment on January 22, 1917, sustaining the complaint in all its parts and in consequence ordering and decreeing that the property of seven acres described in the complaint and forming a part of the other property of thirteen acres known as "El Barro," also described in the complaint, belongs in fee to plaintiff José Federico Carlo Zapata by titles of purchase and inheritance. The judgment further ordered the cancelation of the record of the said property called "El Barro" in the joint names of the defendants as intestate heirs in so far as the said record affects the seven acres belonging to the plaintiff. The judgment further ordered that the said tract of seven acres be recorded in the name of the plaintiff and adjudged null and void the conveyance made by the marshal of the Municipal Court of Cabo Rojo to Angel A. Vázquez and by the latter to Luis Ferrer before Notary Miguel del Toro Colberg on March 16, 1916, imposing the costs, disbursements and attorney fees upon the defendants who opposed the action.

Defendants José Antonio, José María and Luis Ferrer and Angel A. Vázquez moved for a new trial and the motion was overruled on January 31, 1917.

Defendants José Antonio, José María and Luis Ferrer and Angel A. Vázquez appealed to this court from the judgment of January 22, 1917, and assign various errors which we shall consider in the order in which they appear in the brief.

### I.

The court erred in overruling the motion of the defendants to strike out certain counts of the complaint and make others more specific.

In the said motion defendants José Antonio, José María and Luis Ferrer and Angel A. Vázquez asked the court to

order: (*a*) that in the first count of the amended complaint the plaintiff specify the date on which José María Ferrer acquired from Lázaro Ferrer the property of thirteen acres described therein and whether the transaction was set out in a private or public instrument; (*b*) that the plaintiff state in the second count of the complaint the names of the heirs of María de los Angeles Pabón at the time of her death, for it being alleged that there was a partition and distribution of the estate among her heirs, the defendants should know who were the heirs, and further, to state clearly the location and boundaries of the two acres of land allotted to María de los Angeles Ferrer y Pabón, plaintiff's predecessor in interest; (*c*) that the plaintiff further state the location and boundaries of the acre of land conveyed to María de los Angeles Ferrer y Pabón in the partition of the estate of her deceased father, as recited in the fifth count of the complaint.

In the same motion it is asked: (*a*) that the words "together with other lands" be stricken from the third count of the complaint because they are immaterial, impertinent and redundant; (*b*) that the seventh count be wholly stricken from the complaint because it is immaterial, impertinent and irrelevant to the action and does not affect all of the defendants.

The court acted correctly in overruling the said motion in all its parts.

The plaintiff alleges in the complaint that he is the owner of the rural property of seven acres therein described as belonging to his predecessor in interest, María de los Angeles Ferrer y Pabón, and in order to prove that ownership it was sufficient for him to allege, as he did, that of these seven acres his predecessor in interest had acquired two by inheritance from her mother, four by purchase from her deceased father, José María Ferrer, and one by inheritance from her said father. It was enough for the defendants to be informed that the lands acquired by María de los Angeles Ferrer by inheritance from her father and mother were in-

cluded in the property of seven acres described in the complaint, especially as the complaint gives descriptions of the four acres that María de los Angeles Ferrer acquired from her father and of the rural property composed of these four acres and the two acquired by inheritance from her mother, as well as of the rural property composed of these six acres and the other acre acquired by inheritance from her father. The identification is clear and the defendants could have had no doubt as to the property which the plaintiff claimed as owner.

Nor was it necessary to specify in the second count of the complaint the names of the heirs of María de los Angeles Pabón among whom her estate was partitioned and distributed, for as participants in that inheritance the defendants must have known who were the heirs, as must also attorney Angel A. Vázquez who was in charge of the proceeding for the designation of the heirs of the spouses José María Ferrer and María de los Angeles Pabón. Moreover, all of the said heirs are named in the eighth and ninth counts of the complaint, the demand of the defendants being thus met.

The plaintiff having alleged in the third count of the complaint that his deceased wife had purchased from her father, José María Ferrer, the four acres of land described and that the said land had been allotted to him upon the death of his wife, María de los Angeles Pabón, it was not superfluous to add that such allotment was made to him "together with other lands" in order to avoid the understanding that the allotment to José María Ferrer was limited to these four acres, and in order, to a certain extent, to identify more clearly the four acres acquired by María de los Angeles Ferrer. So much as to the motion to strike out.

The seventh count of the complaint, referring to the action for the annulment of the will of María de los Angeles Ferrer and the result of that action, tends to strengthen the plaintiff's title, his right to the property of his deceased wife

being derived from the said will, and although it may per-
haps have anticipated a defense against its nullity, it did
not materially affect the rights of the defendants and hence
can not be considered a fundamental error which alone would
move us to reverse the judgment.

## II.

The court erred in overruling the demurrer as to misjoinder of
parties defendant, improper joinder of causes of action and insuf-
ficiency of facts alleged in the complaint to determine a cause of
action against defendant Angel A. Vázquez.

These grounds of demurrer were interposed by defendant
Angel A. Vázquez who alleged that he had no interest in the
matter when the original complaint was filed, or when the
amended complaint was added, because he had sold the prop-
erty in suit to defendant Luis Ferrer, and that in order to
join several causes of action these must affect all of the
parties to the action, while from the face of the complaint
it appears clearly that defendant Angel A. Vázquez is not
affected by the nullity of the record and declaration of title
referred to in the first ten counts of the complaint, because
he took no part in the transactions to which the same relate,
and that none of the other defendants, with the exception of
Luis Ferrer, were parties to the sale between the latter and
Vázquez which it is sought to annul.

Considering the complaint as a whole and the object pur-
sued by the plaintiff, it is evident that not only the heirs of
José María Ferrer and María de los Angeles Pabón have
an interest in the nullity of the record of the property of
thirteen acres in so far as concerns the seven acres claimed
by the plaintiff, but that defendant Angel A. Vázquez also
has an interest therein, because his right flows from that of
the defendant heirs who are also interested in the annulment
of the sale made by the marshal of the Municipal Court of
Cabo Rojo to defendant Angel A. Vázquez and by him to
Luis Ferrer, which annulments are prayed for in the com-

plaint. The statute applicable to the case is section 63 of the Code of Civil Procedure, which reads as follows:

"Sec. 63.—Any person may be made a defendant who has or claims an interest in the controversy adverse to the plaintiff, or who is a necessary party to a complete determination or settlement of the question involved therein."

Under that statute the heirs of José María Ferrer and of María de los Angeles Pabón, as well as attorney Angel A. Vázquez, have been properly made parties to the action.

"The general rule on the subject may be stated to be that all are necessary parties who have an interest in the subject-matter which may be affected by the decree. This rule is founded in the principle of preventing future litigation and avoiding a multiplicity of suits by adjudicating upon the rights of all parties upon whom a decree may or ought to operate." *Wilson* v. *Castro,* 31 Cal. 427.

The causes of action have been properly joined, for the rights which defendant Angel A. Vázquez conveyed to defendant Luis Ferrer originated from the rights of the heirs of José María Ferrer and María de los Angeles Pabón, so that the annulment of the rights of the heirs would bring about the annulment of the rights of defendant Angel A. Vázquez and consequently those of Luis Ferrer, unless by proper plea and proof the defendants show them to be innocent third persons, and it is not the duty of the plaintiff to plead this negatively, but it is incumbent upon the defendants to set it up as a defense. When several causes of action are intimately related by being derived one from the other, there is no objection to sustaining their joinder. *Lucero et al.* v. *Heirs of Vilá,* 17 P. R. R. 141.

As to the plea that the complaint does not state facts sufficient to constitue a cause of action against defendant Angel A. Vázquez, the eleventh and twelfth counts of the complaint, read in connection with the preceding counts, show clearly that if said allegations are true (and we must

so consider them for the purpose of disposing of the demurrer) that plea cannot be sustained.

### III.

The court erred in reconsidering on its own motion the order requiring the plaintiff to state separately the different causes of action set up in the complaint.

On November 16, 1916, defendants José Antonio Ferrer, José María Ferrer, Luis Ferrer and Angel A. Vázquez filed a motion alleging that in counts 1 to 10 of the complaint the plaintiff set up an action for the annulment of a record and the execution of a deed against the succession of the spouses José María Ferrer and María de los Angeles Pabón while counts 11 and 12 of the same complaint set up an action for nullity of a deed against Luis Ferrer and Angel A. Vázquez, the latter not being a member of the succession of Ferrer, notwithstanding which several causes of action had been joined without being stated separately, wherefore they asked that the plaintiff be ordered to plead the different causes of action separately.

By its order of November 27 the court sustained that motion and ordered the plaintiff to amend his complaint by stating the causes of action separately, giving him two days in which to file such amended complaint, but by another order of November 28 the court reconsidered and set aside its order of the day before on the ground that the motion of the defendants was not in order after the complaint had been answered.

Subdivision 8 of section 104 of the Code of Civil Procedure allows the plaintiff to join several causes of action in the same complaint under certain stated conditions, such causes of action to be stated separately; and, according to that section, the defendant may demand that the causes of action shall be stated separately by the plaintiff, but that right must be asserted by the defendant before answering the com-

plaint, otherwise he waives the right and submits to a trial under the terms set up in the complaint.

The defendants were dilatory in the assertion of that right and the court, under the authority conferred upon it by subdivision 8 of section 7 of the Code of Civil Procedure "to amend and control its process and orders so as to make them conformable to law and justice," could reconsider and set aside its order of November 27, 1916.

### IV.

The court erred in forcing the defendants to trial notwithstanding their plea that they were not prepared to defend.

On November 28, 1916, when the trial court *ex motu proprio* reconsidered and set aside its order of the day before directing a separate statement of the different causes of action, the case was called for trial and counsel for the defendants moved for a continuance on the ground of unpreparedness stated as follows:

"I wish to state that the defendants are not ready for trial and I ask for a continuance on the ground of unpreparedness, because having been notified yesterday of an order of the court giving the plaintiff two days to amend his complaint by stating separately the different causes of action set up therein, the defendants abandoned the matter pending the receipt of a copy of the new complaint, and for that reason none of the witnesses required by the attorney for the defendants are present today and we will go to trial only by an express order of the court so as not to be guilty of contempt."

The judge thereupon said:

"The court finds that although it ordered yesterday that the plaintiff state separately the two causes of action, it made no order continuing the trial set for today, but in view of the statement that the defendants are not prepared with their witnesses, the court orders that plaintiff's evidence be examined, after which it will suspend the trial so as to give the defendants ample time to prepare their defense."

Pursuant to that ruling the trial was proceeded with and

after the plaintiff's oral and documentary evidence had been examined without objection on the ground that the attorney for the defendants could not cross-examine the witnesses, Attorney Angel A. Vázquez testified in behalf of the defendants and documentary evidence was also introduced at his instance.

Although the court had expressly agreed to a continuance in order to give the defendants ample time to prepare their defense, the attorney for the defendants did not move to suspend before offering his evidence; furthermore, the defendants did not move for such suspension after their evidence had been introduced.

In these circumstances the appellants cannot complain of unpreparedness. This conclusion will be strengthened by the reasons which we shall set out in considering the ninth ground of appeal, assigning error on the part of the court in overruling a motion for a new trial.

## V.

The court erred in admitting secondary evidence to prove the existence of the deed of partition of the estate of the late María de los Angeles Pabón e Irizarry.

It is true that the court allowed the plaintiff to introduce oral evidence to show that there had been a partition of the estates of the spouses María de los Angeles Pabón e Irizarry and José María Ferrer y Pagán. But since the second count of the complaint does not allege that a deed of partition of the estate of the deceased María de los Angeles Pabón e Irizarry was executed, but simply that the property left by her at her death was divided and distributed among her heirs, including her share in the property of thirteen acres called "El Barro" of which two acres were allotted to María de los Angeles Ferrer y Pabón, plaintiff's wife, the evidence tending to show the partition and distribution of the estate left by María de los Angeles Pabón e Irizarry was admissible under that alle-

gation, although the partition is not witnessed by a public or private document.

## VI.

The court erred in admitting in evidence the will made by María de los Angeles Ferrer.

This assignment of error is frivolous, for in that will María de los Angeles Ferrer named her husband, the plaintiff, as her heir; therefore the right of the plaintiff in the estate of his deceased wife is derived from that will, although he could not acquire more rights than she had in the seven acres of land in question.

In that will, made on August 15, 1910, María de los Angeles Ferrer named her husband, José Federico Carlo Zapata, as her sole and universal heir and in the second clause thereof she stated:

"That her property consists of a rural property in the ward of Llanos Tuna, which she inherited from her parents. That after their marriage her husband built a house on the said property with his own money and this is the house in which they are now living. Said property is seven acres of flat and hilly land planted with sugar cane and is bounded on the north by lands of Amparo Rivera; on the east by lands of José María Padilla; on the south by lands of Luis Ferrer and by the road separating the wards of Llanos Tuna and Llanos Costa; and on the west by lands of Pedro López, of José Antonio Ferrer and of Amparo Rivera."

This is the same property of seven acres described in the fifth count of the complaint.

## VI (duplicated).

The court erred in admitting in evidence two certificates of the Treasurer of Porto Rico which have no bearing upon the property in controversy.

The first of said certificates, which we will designate by letter A, reads as follows:

"The undersigned acting Treasurer of Porto Rico certifies that

it appears from the records of this department that José M. Ferrer Pagán declared for taxation in the fiscal year 1902–3 a rural property in the ward of Llanos Tuna of the municipality of Cabo Rojo composed of twelve acres and valued at $92, containing a house valued at $35, or a total of $127. The said property was eliminated from the tax assessment for the fiscal year 1905–6 and following, for the reason, as set forth in a writing signed by Fernando Ferrer on January 30, 1915, that the property was distributed and sold by Ferrer Pagán before his death to Luis Ferrer, Germán Ramírez, Gregorio Asencio, Angel Méndez, Amparo Rivera and José Antonio Ferrer. José María Ferrer y Pagán does not appear as a taxpayer in the municipality of Cabo Rojo for the current fiscal year of 1916–17."

The other certificate, which we will designate by letter B, reads as follows:

"The undersigned acting Treasurer of Porto Rico certifies that according to the records of this department relating to the assessment of property for the fiscal year 1902–3, María de los Angeles Ferrer y Pabón, declared her ownership of the following properties in the ward of Llanos Tuna of the municipal district of Cabo Rojo: Rural tract of six acres of land valued at $80 and personal property valued at $51, total $131, on which a total annual tax of $1.46 was levied as shown by tax receipt No. 512, assessment 512 of the said fiscal year 1902–3."

Objection was made to the admission of certificate A on the ground that it refers to a property of 12 acres of land declared for taxation in the year 1902 and valued at $92, bearing no relation to the property of seven acres claimed in this action. The admission of the certificate marked letter B was objected to as irrelevant, inasmuch as José María Ferrer, predecessor in interest of María de los Angeles Ferrer, died in the year 1903 and the said certificate refers to the year 1902.

While we do not see that the first certificate has any relation to the property of seven acres described in the complaint, for it refers to a property sold by José María Ferrer Pagán before his death to persons other than the predecessor

in title of the plaintiff, María de los Angeles Ferrer y Pabón, the admission of that certificate would not alone be a ground for the reversal of the judgment, since it has not been shown that its admission would be detrimental to the defendants.

As to certificate B, we consider it pertinent to the question at issue, i. e., the ownership of the property of seven acres of María de los Angeles Ferrer, for although the certificate refers to a property of six acres and the property described in the complaint is one of seven acres, the difference of one acre is explained by bearing in mind that the declaration was made for the fiscal year 1902–3, when José María Ferrer y Pagán was still living, María de los Angeles Ferrer having acquired the other acre by inheritance from him and therefore could not yet declare it as hers for the purpose of taxation.

## VII.

The court erred in admitting in evidence private documents to which none of the opposing defendants were parties.

The first of these documents, designated by letter C, reads as follows:

"Letter C.—I have received from my legitimate daughter, María de los Angeles Ferrer y Pabón, the sum of $140 as the purchase price of four acres of cultivated land belonging to me in the ward of Llanos Tuna. It is bounded on the north by the property of Germán Ramírez; on the south by lands of the vendor and vendee; on the east by lands of José María Padilla, and on the west by lands of the vendor. This piece of land is joined to a parcel of two acres which she acquired by inheritance, forming a property of six acres. I purchased said land from my father, Lázaro Ferrer, and under that title I have sold it free of all incumbrances with such outlets, entrances, uses, customs, servitudes and perquisites as may now and hereafter pertain to it in fact and in law, for the aforesaid sum, the receipt of which I acknowledge. In warranty of this sale I bind my present property, submitting to and renouncing all laws and rights in my favor. And as her lawful title I sign this document in the ward of Llanos Tuna of the municipality of Cabo Rojo on December 6, 1900. By reason of the inability of my father (José

María Ferrer) to sign, I sign for him.—Fernando Ferrer. Witnesses: José Federico Carlo, Gregorio Lozada, Ubaldino Ferrer.''

According to the bill of exceptions, the defendants objected to the admission of the said document because it is not signed by the person appearing as vendor, José María Ferrer Pagán; because if the sale was made the signature of the purchaser, María de los Angeles Ferrer, does not appear; because according to the testimony of Fernando Ferrer the money was not paid, but José María Ferrer told him to execute said document and witness knew nothing of the sale; because in order to affect Angel A. Vázquez, who is a party defendant, the document would have to be signed before a notary by the vendor and vendee.

The other three documents, marked letters D, E and F, are as follows:

''Letter D.—Received from Germán Ramírez y Ferrer the sum of eleven dollars for seven-twelfths of an acre of land which I have sold to him in the ward of Llanos Tuna of this municipal district bounded as follows: On the north by lands of the purchaser; on the south by lands of Angel Méndez; on the east by lands of the purchaser, and on the west by lands of José M. Padilla. Said land belongs to my lawful children Indalecio, Jorge Benjamín, Lisandro and Arsenio, who inherited it from their deceased grandfather, José María Ferrer, and I declare that the said sum of eleven dollars, belonging to my children, less the share of Indalecio which will be delivered to him because he is of age, will remain on deposit in my custody during the minority of the others. I have sold the said land to said Germán Ramírez Ferrer free of all incumbrance. I also declare that the amount received is the true value of the land, but in case it should be worth more, I relinquish the excess, whether little or much, in favor of the purchaser, to whom I grant, renounce and transfer the right of ownership, dominion and control which my said children held in said lands, transmitting the same to the new owner so that he, as lawful holder, may freely dispose thereof. And in witness of his title I sign this document in Llanos Tuna of Cabo Rojo this 23rd day of January, 1904. Delfín Carlo Zapata.—Indalecio Carlo.—Jorge Benjamín Carlo.—Witnesses: Ubaldino Ferrer, José Antonio Ferrer, Delfín Pérez.''

"Letter E.—I, Amparo Rivera y Ferrer, of age, married to Tomás Saldaña, resident of Mayagüez, in the presence of the undersigned witnesses, declare: That I have sold to Pedro López, resident of the ward of Llanos Tuna of Cabo Rojo two and one-half acres of high and low land, planted with sugar cane and small crops, forming part of a property belonging to me situated in the ward of Llanos Tuna of the municipal district of Cabo Rojo, for and in consideration of the sum of one hundred dollars which I have received. Said property is bounded on the north and west by lands of Germán Ramírez; on the south by lands of the Succession of María de los Angeles Ferrer, and on the east by lands of Valentín Martínez and Nicanor Ramírez. I inherited the said land from my deceased grandparents, José M. Ferrer and María de los Angeles Pabón, and I sell the same to the grantee free of all incumbrance and bind all of my property, both present and future, for the warranty of this title. I authorize my vendee to institute possessory or dominion title proceedings in his name to prove his title to the property which I have sold him whenever he may deem proper, and for the purpose of witnessing his lawful title I sign this document at Mayagüez this 22nd day of March, 1913. Correction.—The property is bounded on the west by the property of José A. Ferrer.—Amparo Rivera de Saldaña.—Witnesses: José Antonio Ferrer.—José F. Carlo."

"Letter F.—We have received from Germán Ramírez the sum of twenty-two dollars, value of 7⅓ *cuadros* of high and rocky and pasture land in the ward of Llanos Tuna, municipal district of Cabo Rojo, which we have sold to him of a property belonging to us. Said property is bounded on the north, east and west by lands belonging to the purchaser and on the south by lands belonging to Ramón and Amparo Rivera, and the said property was inherited by us from our deceased father, José M. Ferrer, under which title we have sold the same to him free of all incumbrance, with its entries, outlets, uses, customs, servitudes and perquisites belonging and which may hereafter belong thereto in fact and in law for the said consideration the receipt of which we duly acknowledge. In warranty of this sale we bind our present and future property, renouncing all laws, privileges and rights to which we may be entitled. And in witness of his lawful title we sign this document in the ward of Llanos Tuna, municipal district of Cabo Rojo, Porto Rico, U. S. A., this 12th day of January, 1904.—Fernando Ferrer.—Luis Ferrer.—Witnesses: Emilio A. Segarra, Francisco Irizarry, Ubaldino Lozada."

The defendants objected to the admission in evidence of documents D, E and F on the ground that they did not relate to the subject-matter of the suit and were private documents which could not affect a third person.

The objections to the admission of said documents C, D, E and F are not supported by the grounds stated, for although in so far as concerns document C the signature of vendor José M. Ferrer is lacking because of his inability to sign, his son, Fernando Ferrer, signed for him, and the signature of the purchaser was not necessary, especially as it was shown by the evidence that she had accepted the contract and taken possession of the land sold, it being immaterial whether or not Fernando Ferrer knew that the consideration had been received by his father.

Nor was it necessary that the document should be signed before a notary by the grantee in order that it might affect Angel A. Vázquez, for there is no provision in the Civil Code directly so requiring in order that a private document may affect a third person.

As to the other three documents, D, E and F, it cannot be argued that they should be denied admission in evidence because they bear no relation to the subject-matter of the suit, for they tend to show that there was a partition of the property of the spouses José M. Ferrer and María de los Angeles Pabón by adducing proof that the lands acquired in the partition by the heirs of the said spouses had been sold to third persons. Although these are private documents it cannot be held absolutely that they contain nothing that could affect a third person.

The efficacy and scope of the four documents referred to could be argued in weighing the probative value thereof.

## VIII.

The court erred in weighing the evidence and in rendering judgment sustaining the complaint.

The lower court found that the plaintiff was the sole

owner by testate inheritance from his deceased wife, María de los Angeles Ferrer, of the property of seven acres described in the complaint, she having acquired two acres in the partition of the estate of her deceased mother, María de los Angeles Pabón, four acres by purchase from her father, José María Ferrer, and one acre in the partition of the estate of her said father, and having been in possession of the same from the dates of their acquisition until her death, which facts were known to the defendants, including defendant Angel A. Vázquez, who has been acting as attorney for his co-defendants since February, 1911.

That conclusion is sustained by the testimony of the heirs of José María Ferrer and María de los Angeles Pabón, Fernando Ferrer, José María Ferrer, Luis Ferrer, Delfín Carlo y Zapata, widower of the deceased heir Dolores Ferrer, Primitivo Ferrer, son of the deceased heir Ubaldino Ferrer, and by the testimony of witnesses José Federico Carlo Zapata, José Benet, Alfredo Carlo and Pedro López Carlo. Moreover, it is a fact that defendants Indalecio and Lisandro Carlo y Ferrer, Ramón María Rivera y Ferrer, Primitivo María Jesús and Concepción Ferrer y Toro confessed judgment because they considered the allegations of the complaint to be true. And the documentary evidence consisting of certificate B issued by the Treasurer and the private documents C, D, E, F, hereinbefore transcribed, corroborates the testimony to the effect that a partition of the estate of the spouses José María Ferrer and María de los Angeles Pabón was made by the interested parties. A sale of partitioned property can not be made unless there is a previous partition.

And the finding of the lower court that Attorney Angel A. Vázquez knew that plaintiff José Federico Carlo Zapata was the owner of the property of seven acres in question is not erroneous, for it is sustained by the fact that defendant Vázquez contracted professional relations with plaintiff Federico Carlo Zapata for the purpose of enabling the latter

to legalize and record the title to the seven acres of land which had been devised to him and by the statements made by Vázquez to Zapata to the effect that he could not be evicted from the property because it belonged to him and he had inherited it from his wife, having built the house thereon with his own money.

The court further states that it is also convinced that the action for the recovery of fees brought by Angel A. Vázquez against the heirs of Ferrer Pabón in the Municipal Court of Mayagüez was simulated and instituted with the object of obtaining a judgment by agreement with several of the defendants and unknown to José Federico Carlo in order to levy on the said seven acres of land. The appellant excepts to this finding, but we do not think it necessary to consider the case from that aspect, for if the property of seven acres belonged to the plaintiff by inheritance from his wife, María de los Angeles Ferrer, who acquired it partly by purchase from her deceased father and partly by inheritance from the latter and from her mother, María de los Angeles Pabón, all of which was known to the defendant heirs and to codefendant Angel A. Vázquez, it necessarily follows that the sale of the seven acres at public auction to defendant Vázquez and consequently the sale by Vázquez to defendant Ferrer are null and void, as are also the records of such sales in the registry of property. Angel A. Vázquez cannot take advantage of the benefits which the law confers upon third persons, for he has not that character, knowing as he did that the property bought by him at public auction belonged to the plaintiff. *Ninlliat* v. *Suriñach et al.*, 24 P. R. R. 61.

No question arose in the lower court as to the validity or legality of the partitions of the inheritances, for the defendants only specifically denied their legality without alleging new matter, or making any material defense, or even filing a counter-complaint which would put before the court and the parties the civil status of the heirs in said partitions.

The question of nullity comes too late and does not deserve consideration.

### IX.

The court erred in overruling the motion for a new trial.

Defendants José Antonio, José María and Luis Ferrer and Angel A. Vázquez moved the court for a new trial on the following grounds:

"1. Irregularity in the order of the court reconsidering its ruling that the plaintiff state separately the different causes of action set up in the complaint.

"2. Accident or surprise which ordinary prudence could not have foreseen.

"3. That the judgment is contrary to law."

In corroboration of the first two grounds an affidavit was filed by Attorney Angel A. Vázquez alleging the following:

"That the trial of the case having been set for November 28, 1916, the court, on motion of the defendants, made an order on the 27th of said month directing the plaintiff to state separately the different causes of action set up in the complaint, allowing him two days therefor which expired on November 29; that as a result of the said order of November 27 the attorney for the defendants absolutely neglected and abandoned preparations for the trial and notified defendant José Antonio Ferrer, who resided in one of the wards of Cabo Rojo, not to come to the trial because the attorney understood that there was neither complaint nor answer in the record and that therefore the trial had been suspended by virtue of the court's order of November 27, 1916; that on November 28, 1918, the attorney appeared at court in order to attend to other different matters and heard the judge say in open court that the court *ex proprio motu* reconsidered its order of November 27, 1916, which greatly surprised the attorney, who up to that time had not been informed that the court was going to reconsider the said order and had not even brought with him the papers in the case; that in view of the court's decision the attorney took exception and moved for a continuance on the ground that he had not prepared his evidence, and further stated that he would go to trial only if so ordered by the court so as not to be in contempt; that the court ordered the case to trial forthwith,

stating that since the attorney was unprepared he would give him every opportunity to introduce his evidence at another session; that among the defendants who answered the complaint is José Antonio Ferrer, eldest brother of the other defendants and the person best acquainted with all of the details of the case, his testimony being vital to the defense; that in the belief that the case would not come up for trial, he did not cause said José Antonio Ferrer to appear to testify personally in behalf of the defense and to furnish him the necessary details for cross-examining the witnesses, and that defendants have a sufficient and meritorious defense and if they are granted a new trial the result would be entirely different and in favor of the defendants, who would then have a proper opportunity to present all their evidence in rebuttal of the testimony of the plaintiff's witnesses.''

The appellants are mistaken in taking it for granted that they would be guilty of contempt if they refused to go to trial.

In view of the wording of the order of the court of November 28, 1916, which is copied in considering the fourth ground of appeal, the defendants, after the plaintiff had rested his case, could have moved for a continuance in order to produce witness José Antonio Ferrer, who they say was the person best acquainted with all the details of the case, to such an extent that his testimony would be conclusive in favor of the defendants. They failed to do so and therefore waived his testimony. But the defendants insist that because the said witness was not present when the plaintiff's witnesses testified they were prevented from cross-examining them because José Antonio Ferrer was the person best fitted to point out the manner in which the cross-examination should be conducted, and to that assertion by the defendants we answer that it was their duty to show what additional facts they could have put in evidence by cross-examination, or what objections they could have made to the credibility of the plaintiff's witnesses, and in the light of such omission it does not appear what injury has been caused the appellants. The alleged error turns wholly on the lack of oppor-

tunity to cross-examine and it should have been shown that the injury done was set out in the record. 4 C. J. 947.

In order to show that the judgment is contrary to the law the defendants contend that the plaintiff's title to the property claimed by him is derived from two partitions made privately by the heirs, and the defendants who entered appearance having denied that such partitions were made, the plaintiff presented in evidence the record of civil case · No. 3131 brought by José María Ferrer Pabón in 1911 for a designation of the intestate heirs of María de los Angeles Pabón and José María Ferrer Pagán. That record shows that when the partitions were made the heirs Indalecio, Jorge Benjamín, Lisandro, Delfín Arsenio Carlo, Ramón María, and Amparo Rivera, born on April 23, 1885, October 1, 1887, August 1, 1892, September 15, 1883 and August 22, 1888, respectively, were minors, and that the plaintiff having failed to show that the partitions were approved by the court, ·said partitions were null and void.

We have already said, in considering the eighth ground of appeal, that no question was raised in the lower court regarding the validity or legality of the partitions, for the defendants merely · made a specific denial of their legality without setting up any new or material defense, and did not even file a counter-complaint to put before the court and the parties the civil status of the heirs in these partitions, the question of nullity coming, therefore, too late. We will now add that the record of civil case No. 3131 for a designation of the heirs of the spouses José María Ferrer Pagán and María de los Angeles Pabón was put in evidence in order to show the nature of the defendants' heirs, but not to prove their ages when the partitions were made, although the certificates of birth of the plaintiffs mentioned in the statement of the case are included in the said record.

In any event, bearing in mind the birth dates of said minors hereinbefore stated, each of them had attained his majority on May 9, 1916, when the amended complaint was

filed. They have not pleaded the nullity of the partitions because they were minors when the partitions were made, but Indalecio and Lisandro Carlo y Ferrer and Ramón María Rivera y Ferrer expressly confessed judgment. Moreover, Indalecio and Jorge Benjamín Carlo Ferrer and Amparo Rivera Ferrer are shown by the documents transcribed in discussing the seventh assignment of error as having sold lands allotted to them, thus ratifying the partitions made and being therefore estopped from denying the same. See *Díaz et al. v. Balseiro & Giorgetti et al., ante*, p. 132.

## X.

The court erred in refusing to admit the amended answer presented by defendant Angel A. Vázquez in order to make his pleadings conform to the evidence admitted at the trial.

A long time after the trial, or on January 20, 1917, defendant Angel A. Vázquez moved the court to admit an amended answer submitted by him, and on February 10 the court disposed of the same as follows:

"On this February 10, 1917, defendant Angel A. Vázquez appeared in his own behalf and the plaintiff appeared by his attorney, José Benet. Said defendant moved the court orally to rule upon the motion of January 20, 1917, for leave to amend the answer so as to make his pleadings conform to the evidence presented by the plaintiff. After hearing the arguments of the respective attorneys, the court overrules the defendant's motion and therefore refuses to allow him to amend his answer."

The appellant contends in support of the above ground of error that as it was shown at the trial that María de los Angeles Pabón and José María Ferrer Pagán died intestate on August 28, 1899, and November 8, 1903, respectively, and that their estates were partitioned without first obtaining a designation of their heirs and such partitions were not submitted to the court for approval, and a parcel of three acres of land having been assigned to Luis Ferrer in payment of the expenses accruing from the sickness and burial of

José María Ferrer Pagán without previous authorization of the court although there were minors, he sought to make the pleadings conform to the evidence introduced by filing an amended pleading containing all these facts, and the court should therefore have exercised the discretion vested in it by sections 136 and 137 in connection with section 140 of the Code of Civil Procedure and should have allowed the amendment.

We do not find that the court abused its discretional power in refusing to allow the amendment.

For the foregoing reasons the judgment and order appealed from should be

*Affirmed.*

Justices Wolf, del Toro, Aldrey and Hutchison concurred.